| | IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA |
|---|---|
| MARLON LEONEL MITCHELL ANDERSON, | GENERAL JURISDICTION |
| Plaintiff, | CASE NO.: |
| vs. | |
| MSC CRUISES, S.A., a foreign for-profit corporation, | |
| Defendant. _____/ | |

**FIRST AMENDED COMPLAINT and DEMAND FOR JURY TRIAL**

Plaintiff MARLON LEONEL MITCHELL ANDERSON (hereafter Plaintiff or "MR. MITCHELL ANDERSON"), by and through undersigned counsel, hereby files his First Amended Complaint and sues Defendant MSC CRUISES, S.A. (Defendant or "MSC"), stating as follows:

**PRELIMINARY ALLEGATIONS**

1.  This is a Complaint for Damages more than $50,000.00 (fifty thousand dollars), exclusive of costs, attorney fees and interest.

2.  Plaintiff, MR. MITCHELL ANDERSON, is a citizen of Nicaragua.

3.  Defendant MSC is incorporated in a foreign state but is registered to do business in Florida and it maintains a registered agent for service of process in Broward County, Florida, to wit: Joel Dovico, Esq., located at 6750 N. Andrews Ave. Suite 100, Ft. Lauderdale, FL.

4.  Further, MSC does business in Florida through its agent, MSC Cruises (USA) Inc., located at: 6750 N. Andrews Ave. Suite 100, Ft. Lauderdale, FL 33309. Said agent sells

intangible personal property on MSC's behalf to individuals and/or business entities. MSC and is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

5. At all times material, the Defendant, personally or through an agent:

   a. Operated, conducted, engaged in, or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Was engaged in substantial activity within this state;

   c. Operated vessels in the waters of this state; and

   d. The acts of Defendant set out in this Complaint occurred in whole or in part of this county and/or state.

6. Personal jurisdiction also lies over MSC because it has committed one or more of the acts stated in F.S. §§ 48.193, 48.081 and/or 48.181.

7. The causes of action asserted in this Complaint arise under the Jones Act, 46 U.S.C. § 30104, and the General Maritime Law of the United States.

8. At all times material, MR. MITCHELL ANDERSON worked aboard the cruise ship M/V MSC SEASIDE ("the vessel") and held the status of a Jones Act Seaman vis-a-vis the vessel and MSC.

9. At all times material, MSC owned, operated, managed, maintained, and/or controlled the vessel. In addition, and/or in the alternative, at all times material, MSC was the agent(s) of the vessel owner, as they were subject to the vessel owner(s)'s control. At all times material MSC had registered the vessel in a flag of convenience country; was operating it in

navigable waters; and was operating it to and from Port Canaveral, Florida as the base of its operations.

10. Further, at all times material hereto, MSC was MR. MITCHELL ANDERSON's employer, either directly or as the borrowing employer in that it controlled numerous aspects of Plaintiff's work and life aboard the vessel.

## FACTUAL ALLEGATIONS
## COMMON TO ALL COUNTS

11. On or about May 22, 2023 MSC employed MR. MITCHELL ANDERSON as a seaman aboard, and member of the crew of, the vessel.

12. Although Plaintiff was initially hired by Espit Ventures PTE, LTD. to work on Defendant's vessel, once on board the M/V MSC SEASIDE, MR. MITCHELL ANDERSON became the borrowed employee of MSC under *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969).

13. First, Plaintiff was assigned to work in sales selling Dead Sea bath products under MSC's Hotel Director and supervisors. Plaintiff took all orders from his MSC supervisors. Plaintiff was never directly supervised by any employees of Espit Ventures PTE, LTD.

14. Once MR. MITCHELL ANDERSON was placed in his position on the M/V MSC SEASIDE, he was performing the work of MSC as a sales associate.

15. Although Espit Ventures PTE, LTD. was Plaintiff's employer under his Employment Agreement, once Plaintiff joined the M/V MSC SEASIDE it was agreed and clear that Plaintiff was working for MSC under a MSC supervisor and assisting MSC in performing on board sales.

16. When MR. MITCHELL ANDERSON joined the vessel and learned that he was to work under MSC, rather than Espit Ventures PTE, LTD., he acquiesced to performing on board

sales for MSC.

17. Upon information and belief, all of MR. MITCHELL ANDERSON's tools, equipment, clothing, shoes, supplies, and food was provided by MSC, and not by Espit Ventures PTE, LTD.

18. Although MR. MITCHELL ANDERSON was hired to work as a seaman and crewmember for Espit Ventures PTE, LTD., in fact he never performed any seaman's work directly under any employee of Espit Ventures PTE, LTD., and never performed any functions on the vessel as a crewmember, other than his work as a sales associate under MSC. In fact, one hundred percent of Plaintiff's work on the M/V MSC SEASIDE was under the control, supervision, and direction of MSC in the sales department.

19. Defendant MSC had the right to terminate Plaintiff and was the entity that conducted reviews of Plaintiff's performance.

20. That Plaintiff was the borrowed servant of MSC is further established by the fact that, once Plaintiff was injured or became ill on board the M/V MSC SEASIDE, MSC directed Plaintiff's medical treatment, made all decisions regarding when and where Plaintiff would sign off, provided for his repatriation, and provided him some medical care off the vessel.

21. As Plaintiff's borrowing employer, Defendant MSC had the nondelegable duty to provide prompt, proper and adequate medical care to the Plaintiff and to provide him maintenance and cure.

22. Alternatively, Defendant MSC undertook the duty to provide prompt, proper and adequate medical care to the Plaintiff and to provide him maintenance and cure, thereby becoming liable for any and all acts and/or omissions regarding the negligent provision of Plaintiff's medical care, maintenance and curative treatment.

23. On the evening of May 22, 2023, while on duty and in the service of the vessel, MR. MITCHELL ANDERSON, who was overworked and fatigued, was descending a flight of stairs when another crew member distracted him, causing Plaintiff to fall.

24. The crewmember who distracted MR. MITCHELL ANDERSON was not properly trained on how to interact with others on stairs and/or to otherwise prevent Slips, Trips and Falls.

25. The stairs did not have adequate railings or hand holds; did not have adequate lighting; did not have adequate non-slip grip; had improper stair height; and/or otherwise did not conform to relevant industry standards for the safe design and construction of staircases.

26. MR. MITCHELL ANDERSON immediately felt the onset of severe pain, especially in his left knee, left ankle and back.

27. MR. MITCHELL ANDERSON immediately reported his fall and injuries to the ship's medical center, which examined him; prescribed NSAID's, muscle relaxants, pain relievers and crutches; and declared Plaintiff to be Unfit for Duty with follow up medical care required.

28. However, the ship's doctor had mis-diagnosed him as having suffered only an injury of the quadriceps muscle and tendon.

29. The vessel was not equipped to provide MR. MITCHELL ANDERSON with the follow up evaluation and treatment which he required, but instead informed Plaintiff that despite his ongoing severe pain he would not be seen by a shoreside doctor for a period of weeks.

30. MSC and the vessel informed MR. MITCHELL ANDERSON that if he wanted immediate medical care then he would have to resign and pursue treatment ashore on his own.

31. MR. MITCHELL ANDERSON did in fact resign and return to Nicaragua, where

he was ultimately forced borrowed money to have diagnostic testing.

32. Those tests revealed a Grade III meniscopathy of the left knee with subluxation.

33. Dr. Bramuel R. Mendoza Berrera has recommended arthroscopic repair of the left knee. However, MR. MITCHELL ANDERSON does not have the money to obtain the surgery.

34. MR. MITCHELL ANDERSON remains in severe constant pain and is unable to perform the daily activities of living in any normal fashion; and his knee injury is causing secondary atrophy and compensation injuries to other parts of his body.

35. MSC and the vessel repatriated MR. MITCHELL ANDERSON with no arrangements for his medical care and have never followed up with him regarding his medical needs. MSC and the vessel have never provided Plaintiff maintenance, i.e., either food & lodging or cash payments to allowing him to arrange his own while he convalesces.

36. MSC and the vessel failed to provide MR. MITCHELL ANDERSON prompt, proper and adequate medical treatment aboard the vessel and/or shoreside; and Plaintiff thereby became injured, and his underlying medical conditions became aggravated.

### COUNT I - JONES ACT NEGLIGENCE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-six (36) as though originally alleged herein, and further alleges:

37. On or about the above dates, MSC employed MR. MITCHELL ANDERSON (either directly or as his borrowing employer as that term is defined under the general maritime law) as a Jones Act seaman and a member of the vessel's crew.

38. At all times material hereto, it was the duty of one or more of the Defendants to provide Plaintiff with a reasonably safe place to work, including the provision of prompt, proper and adequate medical treatment aboard the vessel and shoreside.

39. MR. MITCHELL ANDERSON's injuries were caused by the fault and negligence of MSC and/or its agents, servants, and/or employees as follows:

    a. Failure to use reasonable care to provide Plaintiff with a reasonably safe place to work; and/or

    b. Failure to exercise reasonable care not to distract plaintiff as he was descending the stairs; and/or

    c. Failure to install adequate handrails on the staircase which would have allowed Plaintiff to protect himself from falling; and/or

    d. Failure to provide adequate lighting on the stairs to allow Plaintiff to see the steps confronting him; and/or

    e. Failure to install surfaces on the staircase with a proper coefficient of friction to prevent accidents such as Plaintiff's; and/or

    f. Failure to properly train and/or warn Plaintiff about the dangers of descending the stairs; and/or

    g. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's underlying medical condition when he presented to the vessel's medical center and as he continued to complain as his medical condition and related injuries became aggravated; and/or

    h. Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical conditions and related injuries; and/or

    i. Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers onboard and shoreside with which to provide Plaintiff prompt, proper and adequate medical care; and/or

    j. Failure to carry onboard the vessel proper and adequate medical equipment with which to provide Plaintiff prompt, proper and adequate medical care; and/or

    k. Failure to properly medically manage Plaintiff's medical care after Plaintiff became injured; and/or

    l. Failure to provide prompt, proper, and adequate medical

care, which aggravated Plaintiff's medical condition, related injuries, and caused him additional pain and disability; and/or

      m.     Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

      n.     Creating a work environment where crewmembers are encouraged to return to work with injuries; and/or

      o.     Failure to warn Plaintiff of the dangers of working with a medical injury; and/or

      p.     Failure to provide Plaintiff and other crewmembers who were associated with Plaintiff or Plaintiff's incident giving rise to this action, reasonable hours of employment to not overwork them to the point of not being physically fit to carry out their duties, as MSC's crew, including Plaintiff, were overworked to the point of fatigue; and/or

      q.     Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees, and more particularly the Plaintiff, while engaged in the course of his employment on said vessel; and/or

      r.     Failure to provide Plaintiff with enough sleeping time to cause Plaintiff and the other crewmembers on the vessels the same physical and mental impairments as being drunk. These types of impairments have been documented in the Journal of Occupational and Environmental Medicine; 57:649-655 (October 2000); and/or

      s.     Failure to adhere to the Seafarers' Hours of Work and the Manning of Ships Convention, 1996, with respect to the hours of work and rest, as well as other standards, such as ILO 147; and/or

      t.     Failure to follow sound management practices with the goal of providing Plaintiff a safe place to work; and/or

      u.     Failure to have a proper, adequate and safe Safety Management System Manual and/or violating the International Safety Management Code; and/or

      v.     Vicarious liability for the MSC crewmember who distracted Plaintiff as he was attempting to descend the stairway in question; and/or

      w.      Negligently sending Plaintiff back to work on full duty in an injured condition, aggravating the damages to his knee; and/or

      x.      Failing to adequately investigate prior accidents on the same and similar staircases to prevent accidents such as Plaintiff's; and/or

      y.      Other acts of negligence which will be revealed by discovery.

40. At all times material hereto, MSC knew of the foregoing conditions causing MR. MITCHELL ANDERSONs injuries and did not correct them, or the conditions existed for a sufficient length of time so that MSC in the exercise of reasonable care should have learned of them and corrected them.

41. As a result of the negligence of MSC, MR. MITCHELL ANDERSON was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and his working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline ticket home and back.

WHEREFORE Plaintiff, MARLON LEONEL MITCHELL ANDERSON, respectfully requests entry of a Judgement against MSC which awards him all compensatory, general and special damages allowed by law; pre-judgment interest; costs and post-judgment interest.

## COUNT II - UNSEAWORTHINESS

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-six (36) as though originally alleged herein, and further alleges:

42. On or about the above date, MR. MITCHELL ANDERSON was a seaman and a member of the member of the vessel's crew, which was in navigable waters.

43. At all times material hereto, the vessel was owned, managed, operated and/or controlled by MSC.

44. At all times material hereto, MSC had the absolute, non-delegable duty to provide MR. MITCHELL ANDERSON with a seaworthy vessel on which to serve.

45. On or about the above date, the vessel was unseaworthy by reason of the following:

    a. The staircase was not reasonably fit for its intended purpose; and/or

    b. The staircase's handrail was not reasonably fit for its intended purpose; and/or

    c. The staircase's lighting was not reasonably fit for its intended purpose; and/or

    d. The vessel's crew, including Defendants crewmember who distracted Plaintiff, were not properly trained, instructed and/or supervised; and/or

    e. The vessel's crew, including Plaintiff and/or Defendants crewmember who distracted Plaintiff, were unfit due to fatigue and/or exhaustion; and/or

    f. The vessel maintained an environment onboard where the crew

and Plaintiff were overworked to the point of being so exhausted that they were not physically fit to carry out their duties; and/or

      g.      The vessel otherwise did not have a fit crew; and/or

      h.      The vessel's crew, including Defendants' shipboard doctors, were not properly trained, instructed and/or supervised; and/or

      i.      The vessel's medical personnel were not properly trained, monitored and/or supervised to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition when he presented to the vessel's medical center and as he continued to complain as his condition became aggravated; and/or

      j.      The vessel's medical personnel were not properly trained, monitored and/or supervised to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his emergency medical condition; and/or

      k.      The vessel failed to carry and utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

      l.      The vessel failed to carry and utilize proper and adequate medical equipment with respect to diagnosing and/or treating Plaintiff's conditions; and/or

      m.      The vessel failed to carry and utilize properly trained medical providers to medically manage Plaintiff's medical care after he was injured; and/or

      n.      The vessel had an unsafe and unfit method of operation that sent injured crewmembers, including Plaintiff, back to work in an injured condition, aggravating and exacerbating their conditions; and/or

      o.      The vessel failed to carry and utilize properly trained medical providers to provide Plaintiff prompt, proper, and adequate medical care. which aggravated his injuries and caused him additional pain and disability; and/or

      p.      Other unfit conditions which will be revealed by discovery.

46. As a direct and legal result of the unseaworthiness of the vessel, the MR. MITCHELL ANDERSON was injured about Plaintiff's body and extremities, suffered

physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff in the past and in the future has lost the fringe benefits that come with Plaintiff's job, including but not limited to found, free food, free shelter, free medical care, free uniforms, vacation, and free airline ticket home and back.

WHEREFORE Plaintiff, MARLON LEONEL MITCHELL ANDERSON, respectfully requests entry of a Judgement against MSC which awards him all compensatory, general and special damages allowed by law; pre-judgment interest; costs and post-judgment interest.

### COUNT III – TORTIOUS FAILURE TO PROVIDE MAINTENANCE AND CURE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-six (36) as though originally alleged herein, and further alleges:

47. Plaintiff was injured while in the service of the vessel as a seaman.

48. Maintenance and cure is an ancient legal duty that obligates a vessel owner to provide for a seaman who becomes ill or injured in the service of the ship. *Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962); *Varela v. Dantor Cargo Shipping, Inc.*, 2017 WL 7184605, at *2 (S.D. Fla. Nov. 14, 2017); *Ramirez v. Carolina Dream, Inc.*, 760 F.3d 119, 122 (1st Cir. 2014).

49. Under the General Maritime Law, Plaintiff, as a seaman, was and still is entitled to

recover maintenance (found, food & lodging) and cure (medical care) from the shipowner and/or the employer until Plaintiff is declared to have reached Maximum Medical Improvement (MMI) and/or Maximum Medical Cure (MMC). Maintenance & cure includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer.

50. The obligation to provide maintenance & cure imposes an affirmative obligation to seek out and arrange appropriate medical care for seamen such as MR. MITCHELL ANDERSON, much as a parent would care for an errant child.

51. To be effective an MMI declaration must be unequivocal. Any doubts or controversy regarding whether the seaman has achieved MMI must be resolved in favor of the seaman.

52. To date, MR. MITCHELL ANDERSON has not reached MMI and no doctor has declared that Plaintiff has achieved MMI.

53. MSC has not provided or even attempted to provide MR. MITCHELL ANDERSON any of his overdue maintenance & cure.

54. MSC's failure to provide MR. MITCHELL ANDERSON with maintenance & cure was unreasonable and/or callous, and aggravated Plaintiff's condition and caused him to suffer additional compensatory damages, including, but not limited to, the aggravation of Plaintiff's injuries and further disability, pain and suffering, reasonable fear of developing future physical and medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity, earnings or earning capacity, and medical and hospital expenses in the past and into the future.

55. At all times material hereto, MSC arbitrarily, willfully and callously delayed,

failed and/or refused to pay Plaintiff's entire maintenance and cure; and/or willfully and callously delayed, failed and/or refused to provide the Plaintiff the level of cure that the Plaintiff needs to achieve MMI.

56. MR. MITCHELL ANDERSON has become obligated to pay the undersigned a reasonable attorney's fee to recover his maintenance & cure.

57. MSC's failure to provide MR. MITCHELL ANDERSON's entire maintenance and cure is willful, arbitrary, capricious, in violation of the law, and in callous disregard for Plaintiff's rights as a seaman. As such, Plaintiff is to recover attorney's fees and punitive damages under the General Maritime Law of the United States.

58. MR. MITCHELL ANDERSON will seek leave of the Court to plead for recovery of punitive damages upon development of the record.

WHEREFORE Plaintiff, MARLON LEONEL MITCHELL ANDERSON, respectfully requests entry of a Judgement against MSC which awards him all compensatory, general and special damages allowed by law; attorney fees; pre-judgment interest; costs and post-judgment interest.

### COUNT IV - FAILURE TO PROVIDE
### PROMPT, PROPER AND ADEQUATE MEDICAL CARE

Plaintiff re-alleges, incorporates by reference, and adopts paragraphs one (1) through thirty-six (36) as though originally alleged herein, and further alleges:

59. MSC employed MR. MITCHELL ANDERSON as a seafarer and a member of the vessel's crew, either directly or as a borrowing employer as that term is defined in the General maritime Law. The vessel at all times material sailed in navigable waters.

60. At all times material MSC bore the duty to provide MR. MITCHELL

ANDERSON with prompt, proper, and adequate medical care.

61. MSC, through its shipboard and/or shoreside physicians and/or nurses, negligently failed to provide Plaintiff with prompt, proper, adequate, and complete medical care. This conduct includes, but is not limited to:

    a. Failure to promptly, properly, and adequately diagnose and treat Plaintiff's medical condition(s) and related injuries when he presented to the vessel's medical center and as he continued to complain as his condition/medical injuries became aggravated; and/or

    b. Failure to provide Plaintiff with prompt, proper, and adequate medical care when he sought medical attention for his medical condition(s) and related injuries; and/or

    c. Failure to select, retain and/or utilize competent, skilled and properly trained medical care providers on board and shoreside to provide Plaintiff with prompt, proper and adequate medical care; and/or

    d. Failure to utilize proper and adequate medical equipment with which to provide Plaintiff proper and adequate medical care; and/or

    e. Failure to properly medically manage Plaintiff's medical care after he became injured by Defendants; and/or

    f. Failure to provide Plaintiff prompt, proper, and adequate medical care, which aggravated his underlying medical condition and caused him medical injuries and additional pain and disability; and/or

    g. Negligently sending Plaintiff back to work in an injured condition; and/or

    h. Failure to timely disembark Plaintiff to provide prompt, proper, and adequate medical treatment ashore without delay; and/or

    i. Not reimbursing and/or not timely reimbursing Plaintiff for his out-of-pocket medical expenses, and/or

    j. Not authorizing and/or providing Plaintiff with prompt shoreside medical care, and/or

      k.      Prematurely terminating Plaintiff's medical care.

62.    At all times material hereto MSC knew of the foregoing conditions causing MR. MITCHELL ANDERSON additional injuries and did not correct them, or the conditions existed for a sufficient length of time so that MSC should have learned of them and corrected them in the exercise of reasonable care.

63.    As a direct and proximate result of MSC's failure, MR. MITCHELL ANDERSON suffered aggravation of his injuries, additional pain, additional disability, and/or Plaintiff's recovery was prolonged. In addition, the Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, physical disability, impairment, inconvenience on the normal pursuits and pleasures of life, feelings of economic insecurity caused by disability, incurred additional medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages, income lost in the past, and Plaintiff's working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff will suffer the losses and impaitn1ents in the future.

64.    This Count is alleged separately from Jones Act Negligence pursuant to *Joyce v. Atlantic Richfield Company,* 651 F. 2d 676 (10th Cir. 1981), which states, in part, "negligent failure to provide prompt medical attention to a seriously injured seaman gives rise to a separate claim for relief [for which separate damages are awardable]."

WHEREFORE Plaintiff, MARLON LEONEL MITCHELL ANDERSON, respectfully requests entry of a Judgement against MSC which awards him all compensatory, general and

special damages allowed by law; pre-judgment interest; costs and post-judgment interest.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all claims so triable by right.

Respectfully submitted this 30th day of April, 2024 by:

>BILLERA LAW
>2201 NW Corporate Blvd.
>Suite 200
>Boca Raton, FL 33431
>Telephone: (561) 500-7777
>Fax: (561) 500-7778
>Attorneys for Plaintiff
>
>By:   */s/John F. Billera, Esq.*
>JOHN F. BILLERA, ESQ.
>Florida Bar No.: 869041