UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60715-CIV-SINGHAL

MARLON LEONEL MITCHELL ANDERSON,

    Plaintiff,

v.

MSC CRUISES, S.A.,

    Defendant.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT

**THIS CAUSE** is before the Court on Defendant MSC Cruises, S.A.'s ("MSC" or "Defendant") Motion to Compel Arbitration (the "Motion") (DE [9]), filed on May 6, 2024. Plaintiff Marlon Leonel Mitchell Anderson ("Anderson" or "Plaintiff") filed his Opposition to Defendant's Motion to Compel Arbitration (the "Opposition") (DE [17]) on June 4, 2024. Defendant filed its Reply in Support of the Motion to Compel Arbitration (the "Reply") (DE [21]) on June 25, 2024. Plaintiff also filed an additional Reply in Support of His Request to Remand ("Plaintiff's Reply") (DE [22])[1] on July 2, 2024. As such, the Motion was ripe for adjudication by the Court.

The Motion was referred to Magistrate Judge Jared M. Strauss for a Report and Recommendation ("R&R") on December 30, 2024, pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. Rule 72, and the Magistrate Rules of the Local Rules of the Southern District of Florida. *See* (DE [27]). The magistrate judge issued an R&R on February 5, 2025, recommending that the Motion be granted. *See* (DE [30]). Judge Strauss found

---

[1]     Plaintiff's Reply came without leave of the Court. *See* S.D. Fla. L. R. 7.1(c)(1).

that the Court should apply federal common law to threshold questions of arbitrability, including the application of equitable estoppel to MSC's attempt to compel arbitration. Judge Strauss also concluded that equitable estoppel doctrine dictates that MSC can compel arbitration even as a non-signatory to the Espit employment contract. Mr. Anderson filed his Objections to Report and Recommendation and Request for De Novo Review (the "Objections") (DE [31]) on February 19, 2025. MSC filed its Response in Opposition to Plaintiff's Objections to Report and Recommendation (the "Response to Objections") (DE [34]) on March 14, 2025. Mr. Anderson filed his Reply in Support of His Objections to Report and Recommendation and Request for De Novo Review (the "Reply in Support") (DE [35]) on March 21, 2025. The Court has reviewed all appropriate filings and the record and is fully advised in the premises. In addition, the Court has conducted a *de novo* review of the R&R given Mr. Anderson's objections. See *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)).

**I.     BACKGROUND**

The Court will not rework the facts, background, and applicable legal standards that were articulated by Judge Strauss. This Court adopts Judge Strauss's description of the factual and procedural background and the applicable legal standards in the Report and Recommendation (DE [30]) and incorporates that background by reference herein.

Mr. Anderson worked on one of MSC's cruise ships, M/V MSC SEASIDE ("Seaside"), even though he had been hired by Espit Ventures PTE, LTD. ("Espit"). (DE [5] at ¶¶ 11-13). On May 22, 2023, while purportedly "on duty and in the service of the vessel," Mr. Anderson fell while descending a flight of stairs. *Id.* at ¶ 23. Mr. Anderson subsequently filed a Seaman's Complaint and Demand for Jury Trial (DE [1-2]) in the

Circuit Court of the 17th Judicial Circuit In and For Broward County, Florida on April 2, 2024. That same day, Mr. Anderson commenced arbitration proceedings against Espit in Panama with the International Centre for Dispute Resolution, consistent with the arbitration clause in Mr. Anderson's employment contract with Espit. *See* (DE [9-1]).

On April 29, 2024, MSC filed a Notice of Removal of Civil Action, Pursuant to Rule 9 U.S.C. § 205 and 28 U.S.C. § 1441 (DE [1]), removing the case to this Court. Soon after, on April 30, 2024, Mr. Anderson filed an Amended Complaint (DE [5]). Mr. Anderson's Amended Complaint featured four counts against MSC: Jones Act Negligence, Unseaworthiness, Tortious Failure to Provide Maintenance and Cure, and Failure to Provide Prompt, Proper, and Adequate Medical Care. (DE [5]).

Now, with this instant Motion, MSC seeks to compel Mr. Anderson to arbitrate his claims against MSC in the ongoing arbitration proceedings with Espit in Panama. In MSC's view, Maltese law should be considered "the relevant law for the Panamanian arbitration," which would allow MSC to compel arbitration based on the provision in Mr. Anderson's contract with Espit. (DE [9] at p. 3). MSC, however, also puts forward an alternative basis for standing to invoke arbitration, namely that Mr. Anderson's claims against MSC are rooted in the same facts and are "intertwined." *Id.* at p. 5. As stated previously, Judge Strauss did not concur that Maltese law governed the "interpretation of the [Espit] contract as a whole, including threshold inquiries of arbitrability." (DE [30] at p. 7). To be sure, Judge Strauss did not find Singaporean or Nicaraguan law to be applicable either. *Id.* Rather, Judge Strauss reasoned that federal common law was suitable for "threshold questions of arbitrability, including the application of equitable estoppel to MSC's attempt to compel arbitration. . ." *Id.* at p. 11. Judge Strauss further

3

concluded that MSC can compel arbitration, even as a non-signatory, because Mr. Anderson alleged "substantially interdependent and concerted misconduct" by Espit and MSC that was "intimately connected" with the Espit contract. *Id.* at p. 16.

In his Objections, Mr. Anderson puts forward a handful of challenges to the R&R. He suggests, for instance, that the R&R discharged MSC's burden of proof, which was both "legal error and violation of Plaintiff's due process." (DE [31] at p. 7). In addition, Mr. Anderson argues the R&R's application of equitable estoppel was flawed and broke with precedent. *Id.* at p. 10.

## II.    STANDARDS OF REVIEW

### A.    Review of a Magistrate Judge's Report and Recommendation

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report ... to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues independent of the magistrate judge's report, as de novo review is essential to the constitutionality of § 636. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

### B.    Motion to Compel Arbitration

For cases that center on an arbitration agreement involving foreign parties, the Court must consider the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3, and its implementing legislation, Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208. *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d

1279, 1283–84 (11th Cir. 2015) (citations omitted).  Section 202 of the Convention Act provides that "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."  9 U.S.C. § 202.  A court that has jurisdiction under chapter 2 "may direct that arbitration be held in accordance with the agreement at any place therein provided for," whether within or out of the United States.  *Id.* § 206; *see also Escobar*, 805 F.3d at 1284 (noting that the New York Convention "generally requires the courts of signatory nations to give effect to private arbitration agreements").

The Eleventh Circuit has made clear that the Convention *requires* arbitration "so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies."  *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016) (quoting *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011)).  The four jurisdictional requirements are:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*, 2021 WL 1157833, at *3 (11th Cir. Mar. 26, 2021) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005)).  At the arbitration-enforcement stage, the limited available defenses are that the "agreement is null and void, inoperative or incapable of being performed."  *Suazo*, 822 F.3d at 546 (emphasis removed) (quoting Convention, art. II(3)).  "The null-and-void clause encompasses only those defenses grounded in standard

5

breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals." *Escobar*, 805 F.3d at 1286 (citing *Bautista*, 396 F.3d at 1302).

The party seeking to compel arbitration "bears the burden of proving each of these jurisdictional prerequisites." *Singh v. Carnival Corp.*, 550 F. App'x 683, 685 (11th Cir. 2013). Non-signatories to an arbitration agreement may seek to compel arbitration under equitable estoppel doctrines, as the Supreme Court has held that the Convention "does not conflict with the enforcement of arbitration agreements by non[-]signatories under domestic-law equitable estoppel doctrines." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020).

### III.   ANALYSIS

Judge Strauss recommended that MSC's Motion be granted, arguing that the Court should apply federal common law to the threshold question of arbitrability, and that MSC could compel arbitration, even as a non-signatory to the Espit employment contract, under the doctrine of equitable estoppel. The Court rejected some of MSC's arguments, but MSC did not file any objections to the R&R. As Mr. Anderson made multiple objections, the Court will conduct a *de novo* review.

#### A. Due Process

Citing the Espit contract's arbitration provision, MSC contends that Maltese law governs the Panamanian arbitration, and accordingly, under Maltese law, MSC could compel arbitration—even as a non-party. (DE [9] at p. 3). Mr. Anderson rejects MSC's interpretation of the Espit contract, suggesting that proper interpretation would consider "Maltese law [to be] irrelevant to MSC's non-existent rights under the Espit contract."

6

(DE [17] at p. 14).  Judge Strauss, agreeing with Mr. Anderson, held that MSC was "wrong," since the Espit contract did not make clear what law would govern its interpretation.  (DE [30] at p. 7).  However, Judge Strauss did not agree with Mr. Anderson that Nicaraguan or Singaporean law governed the contract.  *Id.*  Rather, Judge Strauss concluded that the Court should apply federal common law to determine arbitrability, drawing on persuasive authority with similarly situated non-signatories seeking to compel arbitration.  *See Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936 (11th Cir. 2022); *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1168 (9th Cir. 2021) (quoting *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)); *Prcic v. Carnival Corp.*, 641 F.Supp. 3d 1313, 1318 (S.D. Fla. 2022) (Scola, J.).

In his Objections, Mr. Anderson takes aim at the R&R's conclusion, arguing that MSC failed to carry its burden, and he takes particular issue that the R&R "goes on to *sua sponte* research and investigate what it believed the governing law should be. . ." (DE [31] at p. 9).  Mr. Anderson explains that the latter "came as a surprise" to him, suggesting he "was never given the opportunity to respond to either the R&R's characterization of those precedents [in] (sic) its application of them to the facts of this case."  *Id.*  The Court finds this objection to be troubling and must briefly explain.

First, Mr. Anderson's claim that he was deprived "notice and an opportunity to respond" is simply untrue.  *Id.*  With his Objections, Mr. Anderson has brought his concerns to the Court's attention; this involves ample opportunity to respond to Judge Strauss's analysis and application, triggering another layer of review by the Court.  *See Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006) ("Where a proper, specific

7

objection to the magistrate judge's report is made, it is clear that the district court must conduct a *de novo* review of that issue.").

Second, the Court is not sympathetic to Mr. Anderson's implication he was somehow ambushed by Judge Strauss's research and investigation. With technological advancements, the task of researching pertinent case law has become streamlined and simplified—no longer do attorneys need to flip through dusty, voluminous digests in dim reading rooms. With the increased prominence of tools harnessing Artificial Intelligence (AI), further disruption to the legal field is only inevitable. But even if Parties are not familiar with the latest gadgets or technological advancements, locating such cases is simpler than ever. Parties' failure to track down the relevant authority cannot be grounds to claim due process violations. And even as difficult cases get litigated, the Court does its best to reach the right decision. In doing so, the Court need not "decide [questions] with blinders on." *Cosgun v. Seabourn Cruise Line Ltd., Inc.*, 666 F.Supp.3d 1270, 1278 (S.D. Fla. 2023) (citing *United States v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1350 (11th Cir. 2019) ("[T]he court is not limited to choosing one side's position or the other's. The court's role is to get it right, not to choose which side's argument is better and adopt it lock, stock, and barrel.").

Also, and perhaps most telling, the failure to locate the specific case in question—*Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936 (11th Cir. 2022)—is puzzling, considering its clear relation to a case cited in **Plaintiff's Opposition**. *See* (DE [17] at p. 8) (referencing *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1325 (11th Cir. 2018)). The Eleventh Circuit had heard the 2022 *Outokumpu* case on remand from the Supreme Court, which had reversed the 2018 *Outokumpu*

8

decision.  *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020).

Of course, the Court will spend time looking closely at the cases cited in Parties' filings, including for the procedural context, but what remains unclear to the Court is why Plaintiff's counsel did not do the same.  On WestLaw, the 2018 *Outokumpu* opinion receives red-flag treatment, denoting "severe negative treatment."  Had Plaintiff's counsel conducted a cursory search, the 2022 *Outokumpu* case's relevance and subsequent inclusion in the R&R would not have "[come] as a surprise."  (DE [31] at p. 9).  No doubt, Plaintiff's objection is neither meritorious nor the basis for a valid claim that due process rights have been violated.  It is hardly unreasonable to expect Parties to familiarize themselves with the procedural posture of cases they themselves cite in their own filings.

Notwithstanding Mr. Anderson's problems with Judge Strauss's approach, the Court agrees with Judge Strauss's conclusions on the merits.  A plain reading of the arbitration provision in the Espit contract makes clear that Maltese law governs the substantive issues in the arbitration, but that the agreement simultaneously does not mention what law should govern interpretation of the terms in a general sense.  *See* (DE [9-3] at p. 14).  In the absence of clear, binding authority, the Court finds the available persuasive authority to be instructive.  This case involves a non-signatory seeking to compel arbitration, implicating both the New York Convention and the FAA.  Since there are "uniquely federal interest[s]" involved, the Court should apply federal common law to threshold questions of arbitrability.  *Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936, at *6 (11th Cir. 2022) (Tjoflat, J.).

B.  <u>Application of Equitable Estoppel</u>

The doctrine of equitable estoppel is designed to "prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 541 (Cal. Ct. App. 2009).  Under federal common law principles, non-signatories can compel arbitration in two circumstances: (1) "when the plaintiff-signatory must rely on the terms of the written agreement in asserting [its] claims," or (2) "when the plaintiff-signatory alleges substantially interdependent and concerted misconduct by the signatories and non-signatories, and such alleged misconduct is founded in or intimately connected with the obligations of the underlying agreement." *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1119 (11th Cir. 2020) (internal quotations omitted) (citations omitted)).  In the R&R, Judge Strauss held that Mr. Anderson's claims "rely on the Espit contract or, at the very least, allege interdependent misconduct by Espit and MSC that is intimately connected with the obligations of that contract."  (DE [30] at p. 12).

Mr. Anderson objected to the R&R, asserting that it "did not discuss how even one single term of the Espit contract" affected Plaintiff's claims against MSC.  (DE [31] at p. 10).  Instead, Mr. Anderson argues that the R&R "employed a 'but for' test," which led to holdings that were "erroneous and directly contravene" Eleventh Circuit precedent in *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079 (11th Cir. 2024).  *Id.*  In addition, Mr. Anderson challenges that the R&R does not include details or legal authority to support the conclusion that "parallel or even 'identical' allegations against different entities means that the claims against those entities are 'interdependent.'"  (DE [31] at p. 13).

In light of Mr. Anderson's objections, the court has conducted a *de novo* review of the applicability of the equitable estoppel doctrine to the instant circumstances. It is feasible that 'but-for' the Espit contract, Mr. Anderson would not have been on MSC's ship. But, consistent with the Eleventh Circuit's holding in *Usme*, this would be "insufficient to warrant equitable estoppel in similar cases that bind us." *Usme v. CMI Leisure Management, Inc.*, 106 F.4th 1079, 1090 (11th Cir. 2024); *see also Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1174 (11th Cir. 2011) (". . . in this circuit, a but-for relationship between the claims and the contract to be enforced alone is not enough to warrant equitable estoppel.") (internal quotations omitted). The Eleventh Circuit's decision in *Usme* was pointedly "narrow." *Usme*, 106 F.4th at 1091. Still, the case offers helpful insight on what constitutes 'relying' on a contract's terms in this context. A signatory relies on a contract when its claims are "intimately founded in and intertwined with the underlying contract obligations." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) (internal quotations and citations omitted). The signatory "must actually depend on the underlying contract to make out his or her claim against the nonsignatory." *Id.* at p. 1343. And to actually rely on a contract, the signatory's claims "must attempt to hold the nonsignatory to the terms of the contract." *Id.*

Upon further review, this Court is not persuaded that Mr. Anderson's claims rely on the contract. The R&R already made clear this is not a straightforward assessment. *See* (DE [30] at p. 14-15) (Though reasoning that Mr. Anderson's causes of action all arise from seaman status created by the Espit contract, the R&R acknowledges "[i]t is true that Anderson does not allege a breach of the Espit contract or invoke it as the basis for his claims."). Mr. Anderson's complaint indeed does not ground his claims in the

contract with Espit. *See Usme*, 106 F.4th at 1089-90 ("When claims are asserted against entities that are not parties to an employment agreement, those claims generally will not 'actually depend' on the agreement."). And here, Mr. Anderson's claims can be viable based on MSC's purported "dual statuses as his borrowing employer and the owner of the ship." (DE [35] at p. 4); *see also Usme*, 106 F.4th at 1089 (". . . the requisite Jones Act employment relationship under the borrowed servant doctrine may exist without a written contractual agreement."). Accordingly, the Court cannot find that Mr. Anderson relied on the terms of the Espit contract in asserting his claims.

Hence, the Court must turn its attention to the second circumstance in which a non-signatory can compel arbitration. In the R&R, Judge Strauss determined that "[Mr.] Anderson is alleging 'substantially interdependent and concerted misconduct' by Espit and MSC" and that said misconduct is "intimately connected with the Espit employment contract." (DE [30] at p. 16). Mr. Anderson offers several points here, some with greater merit than others. For instance, Mr. Anderson plays on "the reality that attorneys use form pleadings in today's fast paced, high intensity personal injury practice of law"[2] in a manner the Court finds thoroughly unconvincing. *Id.* at p. 13. And while Mr. Anderson critiques the R&R for not citing "one legal authority . . . which holds that parallel or even 'identical' allegations against different entities means that the claims against those entities are 'interdependent,'" the Court notes that Mr. Anderson also did not provide proper

---

[2] On the topic of the form of pleadings, the Court will take the opportunity to point out that, as laid out in the Notice of Court Practice (DE [3]): "Unless otherwise specified by the Court, every motion, legal memorandum, brief, and otherwise shall: be **double-spaced**, in justified alignment, in **12-point font**, using either Times New Roman or Arial typeface." The Court notes that both Parties may have veered from this guidance in their respective filings.

pincite references to support his conclusion that "[t]here is no such precedent, and [the R&R's] holding [and analysis] was error." *Id.*

Mr. Anderson offers other arguments that are more viable, but the Court nonetheless determines that the conditions needed for MSC to compel arbitration are sufficiently present. In this case, Mr. Anderson's Statement of Claim for the Panama arbitration is nearly identical to the factual allegations in his Amended Complaint. *See* (DE [5]; [9-2]). And though Mr. Anderson does not jointly accuse MSC and Espit of collusion, he pleads allegations that lay bare the tangled nature of each entities' services and obligations. For example, Mr. Anderson alleges that MSC's crew supervised his work, supplied his "tools, equipment, clothing, shoes, supplies, and food," and directed his medical treatment. (DE [5] at ¶ 17-20). Yet, under the contract, Espit was supposed to be responsible for these areas.[3] Mr. Anderson even alludes to the unclear boundaries created by this arrangement—that despite entering into a contract with Espit, he "acquiesced to" working under MSC's supervision. *Id.* at ¶ 12, 16. As Judge Strauss considered in the R&R, this all "[belies] the idea, seemingly implied by Anderson's allegations, that MSC provided these services simply because Anderson appeared on the Seaside or as MSC's borrowed employee." (DE [30] at p. 14). When considering the Espit contract even specifies that Mr. Anderson will work on MSC's Seaside, the Court must conclude that MSC and Espit's alleged conduct is sufficiently interrelated for these purposes—and linked to the obligations of Mr. Anderson's contract with Espit. These facts would be sufficient to meet the standards to enforce arbitration as a non-signatory

---

[3] The Parties' respective positions are instructive here. Espit is a "sales concessionaire." (DE [9] at p. 1). Thus, it would not have medical staff aboard MSC's ships. While Espit may have been responsible for medical services, it is logical to assume that Espit would have been dependent on MSC's medical staff to carry out these obligations.

13

in other circuits, *see J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988), and are also adequate here. As such, the Court agrees with Judge Strauss's ultimate conclusion: equitable estoppel "dictates that MSC may compel arbitration even as a non-signatory." (DE [30] at p. 16).

### C. Plaintiff's Notices of Supplemental Authority

On Saturday, March 29, 2025 in the afternoon and evening, Plaintiff filed multiple Notices of Supplemental Authority (DE [36] and [37]) with a statute and several cases attached. The Court carefully read the filings on Saturday and Sunday, but each case and Plaintiff's argument in the filings dealt with the issue of Remand, which is not properly before the Court. In fact, despite various odd titles to pleadings such as (DE [22]) "Plaintiff's Reply Memorandum In Support Of His Request To Remand [DE 17]", no Motion for Remand was ever filed with this Court. Even (DE [17]) referenced in the title above is a Response to (DE [9]), Defendant's Motion to Compel Arbitration. Thus, the supplemental authority provided is irrelevant to any issues before the Court.

Judge Strauss in his Report and Recommendation was also careful to address this very issue so there would be no confusion. There, in footnote one, Judge Strauss wrote:

> In his Response, Plaintiff requests that this case be remanded to the 17th Judicial Circuit in and for Broward County, Florida. [DE 17] at 6, 8–10. The Court will not consider such a request raised in a response to a motion. *See Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1351 (S.D. Fla. 2015) ("It is not appropriate to seek an order for affirmative relief in a response to a motion.") (quoting *Silver v. Karp,* No. 14-80447-CIV, 2014 WL 4248227, at *5 n.3 (S.D. Fla. Aug. 27, 2014)); *see also CompRehab Wellness Grp., Inc. v. Sebelius*, No. 11-23377-CIV, 2013 WL 1827675, at *7 n.20 (S.D. Fla. Apr. 30, 2013) (noting that "a response to a motion is not a motion") (citing Fed. R. Civ. P. 7). Additionally, the Court will not consider Plaintiff's Reply Memorandum in Support of Plaintiff's Request to Remand. *See* [DE 22]. The Reply Memorandum is inappropriate because it is replying to a request for affirmative relief raised in response to a motion. To the

14

extent the Reply Memorandum is a sur-reply, that too is improper as Plaintiff did not first seek leave of Court to file one. *See* S.D. Fla. L.R. 7.1(c)(1).

Having reviewed each filing and argument made by counsel, and having conducted a de novo review of the Report and Recommendation, this Court concludes that Judge Strauss' analysis is well-reasoned and a correct statement of the law.

Accordingly, it is hereby **ORDERED and ADJUDGED** that:

1. Judge Strauss's Report and Recommendation (DE [34]) is **AFFIRMED** and **ADOPTED.**

2. Defendant's Motion to Compel Arbitration (DE [9]) is **GRANTED.**

3. The case is **STAYED** pending resolution of the arbitrable claims. The Parties shall submit status reports every 180 days.

4. The Clerk of Court is directed to administratively **CLOSE** this case and deny any remaining pending motions as moot.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 31st day of March 2025.

Copies furnished counsel via CM/ECF

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE